Good morning, your honors, and Mr. Durant. This is a case in which the petitioner is an asylum applicant, whom the judge found to be credible in her decision. Both the immigration judge and DHS attorney agreed that she'd establish a nexus to a protected ground for purposes of asylum. And the immigration judge found that the degree of harm she described in her testimony reached the level required for finding a persecution. But although the judge found that the petitioner was credible, she did not believe that the petitioner provided adequate corroboration in support of her claim. The government, in its brief, correctly cites Ren V. Holder for the finding that after the passage of the Real ID Act in 2005, even an asylum applicant who's deemed credible and has established a nexus to a protected ground may be denied relief if corroborative evidence is requested by the immigration judge. And the judge feels it's not an explanation as to why it was not reasonably available. I think this case is distinguishable from Ren in that. In Ren, there were three pieces of evidence requested, which were readily available. You know, a bail receipt to show he'd been arrested, a letter from his pastor here in the United States, and a baptismal certificate, which he had possession of. In this case, the judge wanted three pieces of information. I just want to go through those quickly, you know, what they were. The first and the most important were the threatening text messages against the petitioner on her mother's account. That's where the majority of the threats were made. I had specifically told the petitioner, I want a written corroboration from the telephone company if that was not available. However, the judge notes in her decision, she said that the respondent's mother's declaration, I had her send a declaration, shows the efforts that were made to get the text messages, does describe whether or not the available SIM card had been destroyed. So that explains why objective evidence doesn't exist. And she knows that her mother even went to the phone company personally to see if they could be recovered, but they said that they were too old and the judge accepted that. The second was a statement from her uncle, who is a police officer in El Salvador, and his knowledge of petitioner's predicament and the advice he gave her. The respondent stated that she did contact her uncle and her uncle, who's a police officer, basically wanted money, a bribe extortion in exchange for writing the letter. So I had her, she presented evidence from another police officer who was familiar with her situation, who knew her family, who had spoken with her and her parents in a group for advice. And... If I could intercept, maybe you could help me with this. The problem is you're telling us a lot, but not the basis upon which the immigration judge made the decision. The immigration judge gave plenty of time for the securing of this material, came back. She was represented at that time. The lawyer knew what was needed, and they made a representation to the immigration judge with which the immigration judge was not satisfied, and the board agreed. Now, you're telling us a lot about what's in the record, but you're not telling us why, under the rules that govern us, why it is that we should reject the immigration judge's rational position, which was substantiated by the board agreeing. Why do we turn that all over? You're not going to... I take it you're not going to tell us that, in fact, they did get some information. You're telling us why there is something else, but there was nothing shown to the IJ to satisfy her. There was nothing shown to the IJ. Well, but the rule underwritten is that you have to either produce the corroborated evidence or show why it was not reasonably obtainable, and the judge, as far as the things she wanted, she agreed that the text messages, there was no way to retrieve those. The SIM card had been destroyed. Well, it comes down to the Facebook post, because that's what the IJ put the most weight on, and it's the only thing the BIA mentioned. So what's your explanation on the Facebook post? And I'd say that on the record at 111, the IJ states, the Facebook messages, I'm not a technical expert, nor would I try to be. I don't know if they're available. I don't know if it would put the respondent at risk to try and get them. So I'll leave that to you. Now, I wish I had asked the judge further about why she thought it might be putting the respondent at risk to try to get them. But anyway, she expressed considerable doubt as to whether they would be available. What does the record show about what efforts, if any, were made to contact Facebook and make an inquiry whether or not the problem with the lost password and account could be resolved? Okay, well, the client petitioner was a little mixed on that, but she did say on page 125 that she went to the Facebook website. She went to the website. And actually, I know that because she met with an assistant in my office, and they went over the instructions how to reactivate a closed Facebook account. Is that in the record, counsel? No, she said- Is it in the record that she came to your office and your assistant, Asel Hector? Is it in the record? That's not, no, it's not. You have to stay with the record. Okay, all right. I think you understand that. Oh, okay. What I have, though, is that she said that she did make an effort. She went to the website, and she didn't have a username or a password. When did she explain that? Are you out of the record again? No. She did say that she had, when she looked at it, she didn't, she tried to remember, at page 125, let's look at 125. Okay. Did you go to the Facebook website? Yes. What efforts did she make specifically? She tried to remember the password. She tried to remember the email, but it was incorrect, what it was associated with. She couldn't remember. And then- Okay. And the information was given to the IJ, and the IJ said the court is not satisfied with the respondent's explanation for a failure to obtain the threatening Facebook message, and then goes on to specifically say in a long paragraph why the IJ came to that conclusion. The board agreed with the IJ. Now, staying within the record, how can we overturn that determination by the IJ and approve by the board? Well, I don't know that they established under the circumstances what's in the record. How, without that information, would it have been obtainable? All they said was that this would have been readily available. But she had gone to Facebook, she had gone to their website, help site, and it had not been able to obtain the information. Neither the trial attorney nor the judge, nor the BIA suggest under those circumstances how the information would be available. And I think under Wren, if you can't provide the corroborating evidence, then show that it wasn't reasonably available. All right, counsel, you might wanna save the rest of your time for rebuttal. Very good. All right, then we will hear now from Mr. Durant. Good afternoon, gentlemen. Can you hear me okay? Yes. Yes. That's good, that's good. Edward Durant for the attorney general. In this case, petitioner failed to meet her burden of demonstrating that she was eligible for either asylum or withholding of removal because she failed to corroborate her otherwise credible testimony with reasonably available evidence. Now, in this case- Let me ask you, what's the standard? Do we just look at the failure to get the Facebook post and to provide a satisfactory explanation for failing to recover the account and get the material and then that's it? She just, all her relief is gone just because she couldn't get that one piece of information and we don't look at any other issues in the case? I think, Your Honor, if... She didn't get the evidence. The court was not direct, so they didn't even try. Her failure to get the password in July is the same problem we had in March when she knew that it would help her back in March. She just couldn't obtain the password. There's no indication in the record of any effort she made, any effort to contact Facebook. And how many times have we lost our passwords? Now, under Wren, what the court could do now is look at the evidence in the record. She's been found credible. That means that's capable of being believed. Doesn't mean it's the truth. And under that, looking at the evidence she did provide, what the court could do... Counsel, your audio is going in and out and you're kind of freezing, so we're having difficulty hearing what you're saying. I'm sorry, sir? We're having difficulty hearing what you're saying. Your audio is going in and out and your video is freezing momentarily. I'm sorry, sir. Yes, Your Honor, can you hear me okay now? I can. Okay, I do apologize to the court. This wasn't an issue before and I apologize that. Maybe if I slow down, it won't be an issue. But under Wren, what the court would do now, given that the immigration court was unsatisfied with Petitioner's exclamation with respect to the Facebook posts, the court would look to the evidence in the record and determine whether or not she has met her burden of proof and the issue is whether or not that the change is compelled under the statute. So that you'd look at, she did provide a letter from her mother. She did provide a letter from a police officer whom she never spoke to. We're having great difficulty hearing this. Mr. Duran. Oh my gosh. I'm so sorry. Yes, sir. Mr. Duran, this is the technician. On the email that you have for the, where you found the Zoom link, there is a telephone number to call to connect to this conference by telephone. That might be a good idea because then we'll at least be able to hear you. Okay, what's that number? Can you hear me now? Just intermittently. What is that number, sir? If you check the, do you have the email handy? I can give it to you. One moment, please. I'm checking. That's all right with the court. I have the audio stream muted, by the way. Okay, what's that number? One moment, please. I have it here if you need it. I have it right here. Okay, here it is, sir. It's 669-254-5252. Solid copy. I'll do it right now. Stand by. Wait a second. You're going to need the meeting ID and passcode. So take these numbers down. So 160-663-2972. And then the passcode is 354-646. I got it. I'm going to do it right now. Okay. Stand by. Welcome to Zoom for Government. Enter your meeting ID, followed by town. Enter your participant ID, followed by town. Otherwise, just press pass. Please enter the meeting passcode, followed by town. You are in the meeting now. There are 13 participants in the meeting. You have been added to the waiting room. You cannot talk or listen until the host admits you to the meeting. I just admitted you, Mr. Dren. Thank you. I'm going to mute you for video. You'll need to turn the audio off on your phone. Otherwise, you're going to get circulation. Is that better? Is that better? No, just keep the volume all the way down on your iPhone. Got it. Thank you. You might want to just hang up the iPhone and put the video on it. Otherwise, you can't talk. Okay, do we have you on the telephone now? Yes, you sure do. Thank you. Okay. My judges, I'm turning on the public audio again. I apologize to the court for this.  But I believe that the public audio is the best way to communicate the last question that came from Judge Collins. And I think according to Wren, the court would look at the remainder of the evidence in the record to determine whether a petitioner has met her burden of proof. Is that what the agency did? I mean, I'm trying to figure out how the merits relate to the failure to provide corroboration. Because I take it it's not your position that regardless of the merits, the failure to, you don't claim that the Real ID Act means that if you fail to produce one item of evidence, corroborating evidence the IJ wanted, then that's it, you're done, you lose everything no matter what. That's not your position, right? No, Your Honor. I go directly to the statute, to 208 Bravo 2 Bravo. And the immigration judge looks at the credible testimony, which you understand we had some questions about, with the rest of the evidence in the record to determine whether or not she's met her burden of proof. In this case, the judge, having grave concerns about her failure to make any effort to get these Facebook posts, weighed the remainder of the evidence and did not determine that she met her burden. That determination is reasonable. And the court could overturn that if it felt compelled to do so. But the standard of review is whether it's reasonable and certainly in this case it was, because she talked about these messages all the time, not only is that the smoking gun, that's the firing gun. And she gets these, she makes a modicum of effort to recover that password. These messages are presumably available or she shows what efforts she made and there's nothing in the record. And so the judge was certainly within a realm to have a negative inference from that, especially given all the warning she had, especially the time and especially the fact that she was represented by counsel the entire time. Well, what do we to make of the IJ's comment? IJ finds her credible, but then says having failed to testify with sufficient specificity and persuasiveness, the respondent can not meet her burden. I'm kind of unsure what to make of that. Did the IJ find her credible or not credible? He did find her credible in her decision. She noted some inconsistencies which gave her concerns and then she found her credible. Now, finding someone credible is saying it's capable belief. And then when you take that credible testimony with the other evidence, that's when you determine whether or not the burden of proof has been made. Just because you're credible doesn't mean it's a gospel. To the gospel truth, it means that the story is capable of being believed. And when the judge asks for evidence that's presumably readily available, that is the petitioner's burden and she doesn't make any effort to produce it, then the judge can have a negative influence and make that determination that she didn't meet her burden. If this were not the case, then that statute would not be necessary. Now, I also noticed the BIA's ruling relies on a discussion involving the matter of a B decision but that did not appear in the government's brief. Is the government forfeiting that argument? The government will not continue with that argument, Your Honor. Given the Ninth Circuit's case in Renoso, we did not go forward with that argument. The case lives or dies with the car operation. So in conclusion, I mean, does the court have any other questions regarding the evidence that was presented? It was three documents. The first one was from a police officer, not her uncle, Nelson. And the reason the judge presumably gave this such limited weight was not only that she never mentioned him in her testimony, we do not know this person existed. The gentleman's letter appears to be contrary, in fact, adverse to her testimony. He is talking about how he advised her to do X, Y, and Z. And if you look at her testimony, she never spoke to him. She might've known him, but she never spoke to him. And then there are the remaining two letters that the court gave limited weight to. And again, that is to be viewed under the, whether that, the standard review on that is whether or not she met her burden with those pieces of evidence and whether or not a contrary result was compelled. So given the evidence in the record, given the fact that she made no effort to get these Facebook posts or these messages, it's her burden to determine that they're not reasonably available. She failed. So she failed to establish her eligibility for both asylum and withholding and removal. If there are no further questions, this concludes the government's presentation. And again, my apologies for the video snap through this morning. All right, all right. Thank you, counsel. So I think Mr. Nickel, you have about just under one minute left. Okay. Facebook was probably the least important of her used, least important factor in this. And asked about Facebook. She says it at 103. I didn't use it. It wasn't often that I got in my Facebook account, but once I saw a message, then she closed the account. What's her evidence that supports the fear of future prosecution? You know, they didn't seem to have a problem with that. They could go first on past persecution. Also the fact that he's in El Salvador. He's a member of a gang, which operates throughout the country. It's a small country. I don't think country-wide persecution. The judge didn't have a problem with country-wide persecution. And as far as the reasonableness of the judge, you know, the judge wanted letters from family members who have knowledge of her situation in El Salvador. She complied with that. She provided a letter from her mother, from her aunt whom she stayed with in San Salvador. But once those were provided, because the judge was upset about the Facebook, she said that she found the letters to be self-serving because they were, quote, people who have her best interests at heart. All right, counsel, your time has expired. So the case just argued will be submitted. Thank you. Thank you. We'll hear argument. I'll wait till the counsel are on.
judges: Wallace, Rakoff, Collins